THE ATTORNEY-GENERAL *v.* THE NORTH AMERICAN LIFE INSURANCE COMPANY.

The provision of the act of 1869 in reference to the appointment of receivers of insolvent life insurance companies, which authorizes the superintendent of the insurance department to fix the compensation of such receivers (§ 13, chap. 902, Laws of 1869), does not make the decision of that officer conclusive; but upon the presentation of the accounts of a receiver to the court for settlement, the jurisdiction of the superintendent and the regularity of its exercise are before the court, and may be determined by it.

The said provision confers authority to fix compensation for services rendered, not a rate of compensation for future services.

Parties interested in the fund are also entitled to notice and an opportunity to be heard.

Where, therefore, the superintendent, at the request of a receiver, made before his services had approached completion, and upon an estimate of the assets, less than one-half of the amount upon which the receiver claimed compensation, fixed the rate of allowance at five per cent without notice to any one interested in said assets, *held*, that the order was premature; and that an order made upon settlement of the receiver's account directing a reconsideration by the superintendent of his order was proper.

The proceeds of the securities deposited with the superintendent, as a special fund to secure registered policies, are assets in the hands of the receiver, and he is entitled to commissions thereon.

Premium notes and loans made on policies are not assets upon which the receiver is entitled to commissions; they constitute merely offsets against the liability of the company.

Where a receiver had advanced money to pay taxes upon lands covered by mortgages in the hands of the superintendent, then being foreclosed, which advances were repaid from the proceeds of the foreclosure, *held*, that the receiver was not entitled to commissions upon the sum so refunded.

The special fund in the hands of the superintendent is properly chargeable with its proportionate share of the expenses of the trust.

The receiver has no authority without the direction or consent of the court to invest the moneys in his hands; in the absence of directions it is his duty simply to keep and protect the trust fund, and hold it ready for distribution.

Where, however, a receiver without authority from the court, but acting in entire good faith, placed the fund in the hands of brokers to be loaned on call, and charged himself with the amounts received for interest, it appearing that no part of the fund was lost, and that the parties interested therein were not injured, but were probably benefited, *held*, that an order charging the receiver with interest beyond the amount received was error.

*Att'y-Gen'l* v. *N. A. Life Ins. Co.* (26 Hun, 294), modified.

(Argued April 11, 1882; decided May 2, 1882.)

Appeals by Henry R. Pierson and by certain policy-holders from an order of the General Term of the Supreme Court, in the third judicial department, made at the February term, 1882, which affirmed, save so far as relates to the item of interest, an order of Special Term passing the accounts of said Pierson,

as receiver of the North American Life Insurance Company. (Reported below, 26 Hun, 294.)

Said Pierson was appointed receiver March 8, 1877, in proceedings under the act chapter 902, Laws of 1869 ; he presented his accounts up to January 1, 1881, and applied to the court to pass the same. · Said accounts stated the total receipts at $1,368,129.16, upon which sum the receiver claimed commissions at the rate of five per cent. He based this claim upon a letter of the superintendent of the insurance department, dated March 3, 1878, fixing his compensation at that rate. This letter was in answer to a letter of the receiver to the superintendent, in which it was stated that the assets "will not probably realize more than $600,000."

Of the receipts, $750,000 was paid to the receiver by the superintendent, being the proceeds of securities deposited with the latter to secure registered policy-holders. The Special Term decided that the receiver was entitled to commissions upon this sum, and that this special fund and the general fund should be charged each with its proportionate share of the expenses of the trust.

Of the receipts as stated in the accounts, the Special Term held that the following items were to be deducted in determining the amount of assets upon which to compute the amount of receiver's fees : The sum of $398,028.30, which was the amount of premium notes and loans on policies off-set against the face of the policy upon maturity. The sum of $22,583.09, a sum advanced by the receiver out of funds in his hands for taxes on lands covered by mortgages in the hands of the superintendent, which mortgages were being foreclosed, which sum was subsequently repaid by the superintendent out of the proceeds of the foreclosures.

The receiver charged himself with interest stated to have been received upon loans made by him of the fund in his hands ; the account in that respect was confirmed by the Special Term. The General Term held that the receiver should be charged with interest at the rate of four per cent upon his monthly balances, and that his accounts should be sur-

charged with $5,754.02, the difference between the interest so computed and the amount he had charged himself for interest. The facts appearing in reference to the loans so made by the receiver are sufficiently stated in the opinion.

*Rufus W. Peckham* for receiver, appellant. The court assumed a jurisdiction which it did not possess when it substantially set aside the decision of the superintendent of the insurance department, fixing the amount of the receiver's fees. (Laws of 1853, chap. 463, § 17; Laws of 1879, chap. 161, § 2, amending § 17 of the act of 1853; *Atty.-Gen.* v. *At. Mut. L. Ins. Co.,* 47 N. Y. 336, 340; *Atty.-Gen.* v. *N. Am. Life,* 80 id. 152, 154; *People* v. *Assessors,* 39 id. 81; *People* v. *Police Department,* 72 id. 415; *People* v. *Mayor, etc.,* 79 id. 582, 589; Bacon's Abridgment, title "Certiorari," subd. "B."; Laws of 1862, chap. 460, p. 849, § 11; *Gardiner* v. *Tyler,* 3 Keyes, 505; Kerr on Receivers, 216.) Because the court has the "general supervision of the distribution of the funds" is no reason for or justification of the claim to jurisdiction on the part of the Supreme Court, as made in this matter. (Laws of 1869, chap. 902, § 8; *Atty.-Gen.* v. *Atlantic Life,* 77 N. Y. 336, 340.) When the statute speaks of the "securities" in the hands of the department, the word is not there used as contradistinguished from "assets," but simply to describe those securities or that property of the company which is in the hands of the superintendent as distinguished from the other property or securities of the company in its own possession. (Burrill's Law Dictionary, title "Assets"; Bouvier's Law Dictionary, title "Assets"; *In re Atty.-Gen.* v. *N. A. Co.,* 8 N. Y. 152.) The statute (Chap. 442 of 1879) as to the fees of the receiver does not touch the case. (*People* v. *Quigg,* 59 N. Y. 83; *Lefevre* v. *Society, etc.,* id. 434; *In re Appeal of D. & H. C. Co.,* 69 id. 209; *People, ex rel.* v. *Brinckerhoff,* 68 id. 259.) The court erred in striking out, as assets of the company upon which the receiver had the right to base his compensation of five per cent, the sum of $398,028.30 of notes and loans on policies. (*Atty.-Gen.* v. *Ins. Co.,* 12 Barb. 671.) No

rule of law was violated by the receiver in the investments of the trust fund made by him. (Story's Equity, § 833 a; *King* v. *Talbot*, 40 N. Y. 76, 89; *Adair* v. *Brimmer*, 74 id. 539, 550; *Ormiston* v. *Olcott*, 23 Abb. L. J. 275, reversing 22 Hun, 270; *Livermore* v. *Worteman*, 25 Hun, 341; *Chesterman* v. *England*, 81 N. Y. 398, 403, 404.)

*Leslie W. Russell*, attorney-general, for the people. Premium notes and loans were not assets on which the receiver could claim commissions. (Laws of 1869, chap. 902, § 13; *People* v. *Security Life Ins. Co.*, 78 N. Y. 127.) The attempt of the superintendent of the insurance department to fix the compensation of the receiver at the time and in the manner he did was premature. (*Gardiner* v. *Tyler*, 4 Abb. Pr. [N. S.] 463; *Grant* v. *Bryant*, 101 Mass. 567, 570.) The authority conferred on the superintendent by section 13 of chapter 902, Laws of 1869, was not meant to be exercised to the exclusion of the authority of the court over its officers. (*Malcom* v. *Rogers*, 5 Cow. 188.) The court might have deprived the receiver of all compensation for improper conduct. (*Moore* v. *Zabriskie*, 18 N. J. Eq. 51; *Barney* v. *Saunders*, 16 How. [N. S.] 535, 542.) The receiver is not entitled to any commission except upon the surplus after paying in full the registered policies. (*Matter of Receivership Columbia Ins. Co.*, 3 Abb. Ct. App. Dec. 239–242; *Schenck* v. *Dart*, 22 N. Y. 420; *Burtis* v. *Dodge*, 1 Barb. Ch. 77.) It was for the receiver to show, by clear itemized accounts, the exact amount of interest made by the funds in his control, or else all presumptions will be against him, and all obscurities and doubts will be held adversely to him. (Perry on Trusts, § 821; *Boorne* v. *Maybin*, 3 Wood, 724; 1 Perry on Trusts, § 468; *Utica Ins. Co.* v. *Lynch*, 11 Paige, 525.)

*Raphael J. Moses, Jr.*, for policy-holders, appellants. When trustees are directed to invest trust-money on government or real securities, and they do neither, the *cestuis que trusts* are only entitled to have the trust-moneys replaced with interest.

(4 Hare, 500; 1 De G. & S. 314; *Robinson* v. *Robinson*, 1 De G. M. & G. 247; *Knott* v. *Cottee*, 16 Beav. 80; Perry on Trusts, § 462, cases under note 5.) If a trustee suffers trust-money to lie idle he is chargeable with simple interest. If he convert the trust-moneys to his own use, or employ them in his business or trade, he is chargeable with compound interest making annual rests. (*Schieffelin* v. *Stewart et al.*, 1 Johns. Ch. 620; *Dunscomb* v. *Dunscomb*, id. 527; Perry on Trusts, §§ 468, 669; *Bentley* v. *Shreve*, 2 Md. Ch. 219; *Rapalye* v. *Hall*, 1 Sandf. Ch. 339.) The receiver should be charged with legal interest on the sums received until the date of the settlement of the accounts, including his commissions. (Redfield on Surrogates, 708, note 6; *Freeman* v. *Freeman*, 4 Redf. 211; *Whitney* v. *Phœnix*, id. 180; *Wheelwright* v. *Wheelwright*, 2 id. 501; *Harkin* v. *Teller*, 3 Redf. 316.) The court erred in allowing the receiver commissions on the special fund received by him from the superintendent charged with the trust of its payment to the registered policy-holders; the only interest the receiver could have therein was in the surplus. (*Ruggles* v. *Chapman*, 64 N. Y. 557; Laws of 1869, chap. 902.)

*William Barnes* for creditors and policy-holders. The receiver was not entitled to commissions on notes and loans on policies. (Sang's Life Valuations, 45; 11 Assurance Mag. 242; McKean's Life Tables [Am. ed.], 70; Lewis Pocock on Life Assurance, 145; Fackler's Agent's Tables, 19; *Van Buren, Atty.-Gen.*, v. *Chenango Co. Mut. Ins. Co.*, 12 Barb. 671, 672–677; *People* v. *Security L. Ins. & Ann. Co.*, 78 N. Y. 115; *In re Van Allen*, 37 Barb. 223; 2 R. S. [1st ed.] 47, part 2, chap. 5, title 1, art. 8; Laws of 1853, chap. 463, § 11; *People* v. *Security Life Ins. Co.*, 78 N. Y. 115, 127.) The receiver was only entitled to such commissions as are allowed executors. (*Gardiner* v. *Tyler*, 42 N. Y. 508, 509; 4 Abb. Pr. [N. S.] 463; 3 Trans. App. 161; *Muller* v. *Ponder*, 6 Lans. 473; *Grant* v. *Bryant*, 101 Mass. 567; *French* v. *Gifford*, 31 Iowa, 430; *Howes* v. *Davis*, 4 Abb. Pr. 71; Edwards on Receivers [2d ed.], 645–651.) The allowance by the super-

intendent of insurance of the receiver's fees and compensation was *coram non judice,* inoperative, null, void and of no effect in the premises. (*People* v. *Security Life,* 79 N. Y. 267; *Matter of Canal* v. *Walker St.,* 12 id. 406; *Matter of N. Y. C. & H. R. R. R. Co.,* 65 id. 60; *Matter of R. R. Co.,* 64 id. 60, 62; *Matter of Appointment of Mayor,* 49 id. 150; *Gardiner* v. *Tyler,* 4 Abb. Pr. [N. S.] 463; *Green* v. *Bryant,* 101 Mass. 567, 570; *Muller* v. *Ponder,* 6 Lans. 474, 482; Edwards on Receivers, 643–660.) The amount debited by the receiver to himself personally, and credited to himself as receiver, on account of fees and commissions, without any order of the court in the premises, should be repaid to the fund with compound interest. (2 Wait's Pr. 243; High on Receivers, 515; Redfield on Surrogates, 708; *Freeman* v. *Freeman,* 4 Redf. 211; *Whitney* v. *Phœnix,* id. 180; *Wheelwright* v. *Wheelwright,* 2 id. 201; *Harkin* v. *Teller,* 3 id. 216.) The *cestuis que trust* may elect between charging the receiver with interest or the actual profits realized by him; if the actual profits cannot be ascertained, the court will charge compound interest. (2 Wait's Pr. 250–260; High on Receivers, §§ 797, 803, p. 177, § 274; *Bourne* v. *Maybin,* 3 Wood, 724; *Corey* v. *Long,* 43 How. Pr. 492; *Utica F. Ins. Co.* v. *Lynch,* 11 Paige's Ch. 520, 523.)

*William D. Whiting* for various registered policy-holders. The notes and loans on policies were properly deducted from the amount on which commissions should be allowed. (*In re Security Life Case,* 78 N. Y. 127.) The discretion given to the superintendent of insurance to fix the compensation of receivers is similar to the discretion given to judges of the Supreme Court in fixing receivers' commissions, and may be reviewed at Special Term. (*Gardiner* v. *Tyler,* 4 Abb. [N. S.] 468; *Green* v. *Bryant,* 101 Mass. 567, 570; *Muller* v. *Ponder,* 6 Lans. 474, 482; Edwards on Receivers, 643–660.) The deposit with the superintendent of insurance is not subject to receiver's commissions and expenses in case of insolvency. (*Ruggles* v. *Chapman,* 59 N. Y. 163; *In re Guardian Life,* 13 Hun, 115.) The receiver, was not entitled to draw any

commissions until the settlement of his account. (Redfield on Surrogates, 708; 2 Wait's Pr. 243; High on Receivers, 515.) A receiver should keep separate accounts so that the fund may be traced. (High on Receivers, §§ 797, 803; 2 Wait's Pr. 250; *Utica Ins. Co.* v. *Lynch,* 11 Paige's Ch. 520; *Bourne* v. *Maybin,* 3 Wood, 724; *Corey* v. *Long,* 43 How. Pr. 492; Perry on Trusts, 569, § 468.)

*Lucius McAdam* for policy-holders. The order appealed from is right in deducting from the receipts stated by the receiver the amount of notes and loans on policies outstanding, the same not being assets within the meaning of section 13, chapter 902 of the act of 1869. (*People* v. *Security Life,* 78 N. Y. 127; *Matter of Globe Ins. Co.,* 2 Edw. Ch. 625; *Osgood* v. *De Groot,* 36 N. Y. 348; High on Receivers, 511; *Van Buren* v. *Chenango Co. Mut. Ins. Co.,* 12 Barb. 671.) The order is right also in deducting the amounts of premium and interest deducted from death-claims. (*People* v. *Security Life,* 78 N. Y. 126; *Atty.-Gen.* v. *Guardian Life,* 82 id. 338.) The facts, records, and circumstances of the receivership must be before the judge or officer before he can assume the power of fixing the fees. (*Gardiner* v. *Tyler,* 4 Abb. [N. S.] 468; 3 Trans. App. 161.) Chapter 442, Laws of 1879, has no application to this case. It did not purport to amend the act of 1869, and, in fact, refers only to banking associations and bankers. (4 Edm. 144, under title "Police Banking;" Banks' Bros. 6th ed. R. S., vol. 2, p. 323, under title "Safety Fund Banks.") The order of the learned judge, at Special Term, providing that the expenses should be borne *pro rata* by the different funds, conforms to the act of 1869, to the law and practice of the court, and to the principles of equity and natural justice. (*Atty.-Gen.* v. *North Am. Life,* 80 N. Y. 152; 82 id. 172; R. S. 2 Edm. 47, § 29; 2 Daniels' Ch. Pr. 1411 *et seq.*)

FINCH, J. Sufficient reasons have been assigned for directing a reconsideration by the insurance deparment of its order

fixing the compensation of the receiver in this action at five per cent, upon the amount of assets of the company which should come into his possession. That order was premature. It was made before the services of the receiver had even approached completion; before commissions were earned or payable; when it was not certain that the officer would complete his duties; when the amount of care and labor required could only be estimated and could not be known; and when any just ground of judgment was hidden in the uncertainties of the future. It was *ex parte.* Nobody interested in the disposition of the assets had notice or an opportunity to be heard. The receiver wrote a letter requesting an allowance of five per cent, and the superintendent wrote an answer granting it, and although its consequence was to take from the fund, according to the receiver's claim, about $68,000, nobody was allowed opportunity to object, or to influence the important and serious decision. It seems to have been made under a misapprehension. The receiver represented in his letter that the amount of assets likely to come into his possession would be about $600,000. He now claims commissions upon more than double that amount. It is probable that his estimate was made in good faith, possibly because at the time he did not consider the fund in the possession of the insurance department subject to commissions, but nevertheless we cannot be certain that the mistake was immaterial, and had no effect upon the judgment of the superintendent. A decision thus made and producing a result so serious ought not to stand.

But it is said that it must stand; that there is no remedy; that the action of the superintendent is conclusive; and the interference of the courts is arbitrary and without authority. The argument is that under the statute (Laws of 1869, chap. 902, § 13), the compensation of the receiver is to be fixed by the superintendent, and as no notice is expressly required to be given, and no time or occasion specified for the performance of the duty, the officer charged with it is the sole and only judge of the proper time, the suitable occasion, and the rate or amount to be awarded. We do not assent to that doctrine. The re-

ceiver is the officer of the court. It made him and can unmake him. He has no independent authority or power. He is the mere agent or instrument through whom the law takes into its own custody the assets and property of the insolvent corporation, closes its business and makes final distribution. The receiver is under the control of the court. He can do nothing without its orders. When at the end of his duty he presents his accounts, his proper compensation is to be determined by the courts, unless some statute has fixed it or bestowed the authority elsewhere. In the present case he comes before the court to settle, and surrender his trust. Upon the question of compensation he sets up the decision of the superintendent. He brings it into court and claims under it, and so it comes before the court. He subjects it to the scrutiny which that tribunal has a right to exercise and cannot justly withhold. He brings it there as controlling and conclusive, and claims the benefit of it, and that question is fairly presented and must be determined before the distribution can be made which it is the duty of the court to make. And so the jurisdiction of the superintendent and the regularity of its exercise are both before the court, and both involved in its legitimate inquiry.

The statute thus invoked does one of two things, and must be construed in one of two ways. It either authorized the superintendent to fix the rate of compensation in advance, or to determine the proper compensation when the service had been performed. We think the latter is its only true and just construction. A statute may fix a rate of compensation in advance, applicable to a given class of cases, and without reference to a particular individual or specific circumstances. But where an officer is authorized to fix the compensation for services of another officer to be thereafter rendered, and such services necessarily run over a long time and may be widely different in different cases, and deserving consequently a different treatment, we think the authority confers power to fix compensation for services rendered, and not a rate of compensation for services to be rendered in the future. The act of the superintendent is in its nature judicial. He is to act upon

existing facts, and estimate the value of services which have been rendered, and, therefore, can be known and measured. When it appeared that the judgment invoked by the receiver was not such as the statute contemplated, and in addition that it was obtained without the knowledge of parties interested, and upon a mistaken statement of assets naturally tending to affect the mind of the superintendent, the court had a right to deny to its officer the benefit of the decision he claimed, and say to him that if he desired the benefit of the statute and pre-ferred the estimate of the superintendent to the valuation of the court he must go back and get it; obtain it upon the basis of services substantially completed and therefore capable of being accurately known; obtain it fairly upon facts correctly stated and not tending to mislead; obtain it openly and with op-portunity for parties interested to be heard. The power of the court would be very weak if it could not control its officer so far as this. It does not by such direction disregard the statute, or the right of the receiver under it. It recognizes both. It simply requires of its own officer, for whose conduct it is largely responsible, that he shall avail himself of such a right fairly and justly before he asks the court to ratify, and recognize, and act upon it.

In the computation of commissions the special fund deposited with the superintendent as security for registered policies and annuity bonds was treated as assets in the hands of the receiver. The propriety of that decision is questioned on behalf of the policy-holders, mainly because of the provision (Laws of 1869, chap. 902, § 7) that the receiver is to take possession of all the assets and credits of the company, " except the securities deposited in the insurance department." But the next section provides (§ 8) that these securities are to be sold and converted into money by the receiver, superintendent and State treasurer, and when so converted the proceeds are to be paid over to the receiver on his giving his receipt to the superintendent, and the former is thereupon to pay them out; satisfying first the registered policies outstanding, and applying any surplus to-gether with other assets of the company to the payment of its

just debts. We decided, under this provision, that the receiver became the rightful custodian of the proceeds realized, that they were held by him in his official capacity and their safety secured by his bond, and that the superintendent could not delay their transfer until the receiver was ready to make distribution. (*Att'y-Gen'l* v. *North America Life Ins. Co.*, 80 N. Y. 155.) These proceeds were thus assets in the possession of the receiver, and by him received and disbursed, and were properly considered such for the purpose of calculating commissions.

Certain other items in the receiver's account, claimed by him to be assets, were denied to be such for the purposes of the computation. The premium notes and loans on policies, amounting to nearly $400,000, were thus rejected upon the ground that they constituted merely offsets against the liability of the company, and were, as it was tersely expressed by the learned judge at Special Term, "figures, not assets." It is now contended that this ruling was erroneous, that the notes in the hands of the receiver were property, and the company could have sued upon them and recovered. We may grant that they were property without necessarily being conducted to the conclusion that they were assets in the possession of the receiver, for the purpose of estimating his commissions. The policy-holder who had given such a note to the company was a creditor only for the balance, and the dividend payable to him was to be made upon such balance. (*People* v. *Security Co.*, 78 N. Y. 127; 34 Am. Rep. 522.) As matter of fact it follows that the proceeds of such notes were neither actually received by the officer nor disbursed by him. What happened was a computation and payment of a balance, and the process was one of account rather than the receipt and payment of money. To allow commissions upon this class of items would be to give them upon receipts and disbursements having only a constructive and not an actual existence.

It was proper also to deduct from the total of assets the $22,000, representing taxes paid upon lands sold on foreclosure of mortgages held by the superintendent. Otherwise the re-

ceiver would get a double commission upon the sum. Practically it amounted only to a loan by him from general assets to the special fund which the latter returned to him.

That part of the order which apportioned the expenses of the trust *pro rata* between the general and the special fund is resisted on behalf of the registered policy-holders, who claim that the whole of the fund provided for their security should be preserved for them without diminution or abatement. Section 13 of the act of 1869, after providing for the manner in which the compensation of the receiver shall be fixed, authorizes him to employ necessary clerks and actuaries who shall be paid such reasonable compensation as he shall determine, subject to the approval of the superintendent; and then adds " all of which compensation to said receiver, clerks and actuaries shall be a charge on the funds of such company and paid out of said funds." No distinction is here drawn between the general and special funds of the company, but the expenses are imposed upon its funds without exception or discrimination. The argument to release the registered fund, because by section 8 it is to be paid over to the registered policy-holders, does not impress us. It is justly suggested that upon such construction, in a case where all the policies were registered and the fund was just sufficient to meet them, there would be no provision for the payment of expenses. It is said in such case there would be no insolvency and nothing for the receiver to receive. But the provisions of section 8 indicate that, although not technically insolvent in such case, its business would be closed and its assets distributed, because it is only where the actuary's report shows that there are funds sufficient not only to pay the policies and obligations, but also " the legal costs and expenses of the receivership," that the business of the company can be continued. Of course it is difficult, if not impossible, to reach absolute justice in the proper apportionment of expenses to the two funds, but the mode adopted of a *pro rata* distribution seems to us just and the best attainable.

The remaining questions raised relate to the conduct of the receiver in the care and investment of the funds committed to

his charge, and which has been criticized with the effect of inducing the General Term to impose upon him a charge for interest beyond that which he admits to have been received. The case shows that he invested the funds in his hands without the direction or consent of the court. He should have sought its authority and acted in obedience to its orders. He loaned the money through the agency of a firm of brokers, trusting them with its possession and control without security of any kind, and relying solely upon their responsibility and business honor and integrity. While he had a right so to use his own money, it was wrong to subject trust funds to such possibilities of danger and the risk of loss involved. He directed these moneys to be loaned on call, and upon the security of sound collaterals, but kept no detailed account of such loans; produced none kept by his agents; cannot name a single borrower; cannot specify a single loan; furnished no facts by the aid of which the investments could be traced and their character ascertained, or his agent's statement of the amount of interest earned be verified. The court has nothing to depend upon but his own assertion of the amount of interest received, and that is stated in his account, as nearly as we can ascertain, in seven items admitting its receipt generally and in gross, and aggregating nearly $30,000, and leaving unexplained the sources from which it came, or the particular sums which produced it. These things were wrong and a violation of duty.

The statute only authorizes the receiver to collect and pay. It gives no command to invest. Where no directions are given by the court it is his duty simply to keep and protect the trust fund and hold it ready for distribution. If parties interested desire it to be invested, they may apply to the court for such an order, and although they neglect to do so, a loan by the receiver, even temporarily, is a breach of trust. · (*Utica Ins. Co.* v. *Lynch*, 11 Paige, 522.) He takes the fund strictly subject to the orders of the court and to be disposed of by its direction. (High on Receivers, §§ 177, 178.) He is held to great strictness in rendering his accounts and must keep them so that the fund can be traced (id., § 803), and they must be

clear, accurate and distinct. (*Bourne* v. *Maybin*, 3 Wood, 724.) The court, therefore, would have been justified in charging against the receiver the interest complained of, if there was just occasion for so doing. With serious doubt and hesitation on the part of some of us, we have in the end concurred in the opinion that such just occasion does not here exist. The receiver appears to have acted in entire good faith and without trace of any wrong intention. We have no reason to suspect him of any personal benefit in the transaction. No part of the fund has been lost. It is all safe and ready for distribution. No injury has resulted to the parties interested, but on the contrary, it is quite probable that a larger interest has been obtained than would have resulted from the direction of the court. Although disapproving what has been done, we do not think the case is one for punishment, because entire good faith and honesty of intention is manifest, and the fund has been benefited and not harmed.

We, therefore, reverse so much of the order of the General Term as charges the receiver with interest beyond that received by him, and affirm it in all other respects, but without costs.

All concur.

Ordered accordingly.