Bradley, J.
—The motion was instituted by the petition of Stephen V. White, as receiver of the Grocers’ Bank, for the purpose of requiring the Rands to perform an agreement .alleged to have been made with them, by which they undertook to purchase a judgment recovered by the bank against John H. More in November, 1870, for $9,493.71, and the interest of the bank in the estate of More, represented by John M. Davidson in an action in which the Rands were defendants, and pay therefor the sum of twenty-five hundred dollars. The questions presented are (1) whether the contract was in fact made, and if so (2) whether the sale was a judicial one. It appears that in 1871 John M. Davidson was, in proceedings supplementary to execution, founded upon the judgment against More, appointed receiver of the property of the latter; that after-wards, an action was commenced in the superior court of the city of New York by John O. Hollenback and pthers against the Rands and More for the alleged purpose of subjecting to certain trusts, the interest of the latter in property before then held by those defendants as partners. Davidson, as receiver, was brought in as a party defendant in that action. And upon a reference had therein, to take testimony and to ascertain and state the accounts, etc., the referee reported, amongst other things, that there was due from the Rands to Davidson, as receiver, upwards of $15,000. After his appointment in 1880 as receiver of the bank, White, by counsel, took charge of the interest represented by Davidson as receiver in such pending action. And after the coming in of such referee’s report, he instituted proceedings to obtain the instruction of the court in regard to the disposition to be made by him of the remaining assets of the bank, and a reference was directed in that behalf; and pending the hearing before the referee, nego *966 tiations were had between White, as receiver, by Mr. Blair, his attorney, and the Rands, through their attorney, Mr. Crosby, for the sale to the Rands of the More judgment and the interest of the bank in the action before mentioned, the litigation in which was then pending, which negotiation resulted in a proposition from the Rands to purchase such judgment and such interest, and pay for them $2,500.
The referee in his report recommended that the receiver of the bank be authorized by the court to accept such proposition, and make the sale. And thereupon, the court did, by its order, authorize the receiver, White, to make the sale and transfer, for such price, of which Crosby was soon advised, and at his request he was furnished with a copy of the order and informed that the receiver was ready to make the transfer, in whose behalf a draft form of assignment was also handed to Crosby, who prepared one as he desired it and sent it to the receiver’s attorney.
Three days after, and on June 27, 1884, Crosby wrote Mr. Blair and inclosed a draft order of substitution of some person as attorney for defendant Davidson, as receiver, in the action before-mentioned, with a blank for the insertion of the name of the attorney to be substituted, and asked that the consent at the foot of the order be signed by him and by receiver Davidson. And added that it was part of the “ arrangement that this substitution should be made.” Then he, in the same letter inquired, “ Has Davidson, receiver, now any claim for pay as such, or has he any claim lo be allowed, out of any property he might collect belonging to More, fees paid to attorneys employed by him?” and ■says “You understand I do not wish the purchaser and assignee of this judgment to be hereafter liable in any way to Davidson or his attorneys, or to have the fund obtained "by Davidson as receiver, in any way reduced, excepting his ■own fees after this date.”
The following day, Mr. Blair answered this letter as follows: “In reply to yours of yesterday, I will endeavor to :see Davidson, receiver, and obtain from him the desired ■consent for the substitution of attorneys, and will then further answer your inquiries.”
This Crosby letter of June twenty-seventh is regarded as important by the appellant’s counsel in its reference made to the fees of the receiver, and in view of the promise of Blair in his letter to further answer those inquires, inasmuch as no renouncement of the claim of Receiver Davidson to fees was furnished. If nothing further had occurred upon the subject, it would be difficult to determine that any contract was actualy and completely made for the sale in question.
And in support of that view Crosby, in his affidavit, states that this inquiry and statement about such, fees in *967 his letter were not in any manner answered, and that the draft and consent for the substitution of attorneys had not been furnished him, and he was not advised that such consent had been given. Upon this subject there is a conflict presented in the affidavits. Mr. Blair, in his affidavit, states that, after the receipt of the letter of J une 27 th, he saw Crosby and told him that receiver White had paid the fees of the attorneys who represented Davidson, etc., and that as for receiver Davidson’s fees he could not answer, or in any way control that subject, as if any fund should come to his hands as receiver, it would be the province of the court to determine the question of fees. And he further states in the affidavit, that after the receipt of that letter he procured the consent as requested, and submitted it with all the papers required to Crosby early in July, 1884, and that on the 8th of that month went to Crosby’s office to close up the matter, that the latter then pronounced the papers satisfactory, expressly consented to the condition of the substitution required by Davidson, and was not then, but would on the next Saturday or Wednesday, be ready to close the transfer. And Crosby’s letters of July 29th and September 30th, 1884, to Blair, apparently are in support of the view that there was an existing contract of sale, and that the papers were satisfactorily in accordance with it. He there says that the Rands had sent him $2,500 for the purpose of closing the matter as understood between him and Blair, that as he, Crosby, understood it, all the papers to be furnished were then in proper shape, that he wished for a few days delay; and added, “the settlement between you and myself is an accomplished fact. I have the money in my hands to pay over to you for my clients.” This was in the letter of July 29th, and being called upon by a letter from Blair to perform, in his letter of 30th of September, Crosby says:' “I hereby agree that the amount to be paid to you in the settlement of this matter, $2,500, shall be paid between this date and the 15th day of November, 1884, with interest from the 1st day of September.” In explanation of those letters and of the conversation before mentioned, Mr. Crosby says that the matters referred to in his letter of the 27th of June had then escaped his attention.
It is unnecessary to refer to any further communications between these attorneys, as upon the whole, the most that can well be said in the direction of the appellant’s contention, is that upon the question whether the minds of the contracting parties fully met upon the terms of the contract so as to make it effectual as such, was a question of fact which must be deemed disposed of by the court below. The attorney for the appellants afterwards declined to carry out the contract, and the receiver, White, caused a *968 formal tender to be made to Messrs. Rands of the executed papers and demanded the payment of the stipulated price, which was refused. There is no question about the authority of Crosby to represent his clients in making the agreement of purchase. In the court below the conclusion was warranted that it was duly made. But to justify the granting in this summary manner, upon motion, the relief sought, it must appear that the sale which the appellants were required to complete was a judicial' sale in the sense applicable to that term. It is urged by the learned counsel for the appellants that the sale was not judicial, because the receiver was not appointed for the specific purpose of making it; that in doing so he did riot carry into effect any decree of the court directing a sale, that his authority was merely to make the contract for himself as receiver, and not on behalf of the court. And further that it could not have the judicial quality until it became the act of the court by its confirmation. This last proposition may have had some force, if it could be assumed that confirmation of the agreement of sale was requisite to its consummation, as may be the case where the efficiency of such a contract is expressly or impliedly made dependent upon the approval of the court. Williamson v. Berry, 8 How. U. S., 495, 546.
But in this case no confirmation was requisite. The terms of the sale as authorized and as represented by the contract were expressed in the order. And in making the agreement he represented the court. He was the instrument, or officer of the court, and through him the sale may be deemed as made by it. No further action of the court, therefore, seems to have been necessary to consummate the sale. In re. Van Allen, 37 Barb., 225; Atty. Genl. v. Guardian Mut. Life Ins. Co., 77 N. Y., 277; Attorney-General v. North American Life Insurance Co., 89 N. Y., 103.
It is not important, for the purposes of the question, whether the sale be public or private, only that it be made by the receiver pursuant to the direction or authority given by the court. It then has the character of a judicial sale, and the party making it subjects himself to the jurisdiction of the court, and may be required to complete it. Cazet v. Hubbell, 36 N. Y., 677; In re. Attorney-General v. Continental Life Ins. Co., 94 id., 199.
This was the situation of the appellants in the present cáse. The motion was properly entertained by the court below, and no rule of law was violated by the result there ■ given to it.
The order should be affirmed.
All concur.