THEODORE H. MACDONALD, INSURANCE COMMISSIONER,
*vs.* THE AETNA INDEMNITY COMPANY.

*Third Judicial District, Bridgeport, October Term, 1918.
RORABACK, WHEELER, BEACH, CURTIS and HAINES, Js.

The fund deposited with the treasurer of this State by a local insurance
    company in trust for its policyholders, pursuant to § 4264 of the
    General Statutes, which is turned over to and administered by the
    receiver of such company as prescribed in § 4268, is bound to
    contribute its fair share of the cost of the receivership in case the
    company is hopelessly insolvent; and an allotment of this expense
    between such trust fund and the general assets of the company, in
    proportion to the amount of the respective funds in the hands of
    the receiver upon the substantial completion of his labors, will be
    upheld where it is apparent that great benefit has resulted to the
    policyholders from the receiver's services and expenditures, and
    that an exact mathematical adjustment or apportionment of the
    expense is impracticable or impossible.

Argued October 29th—decided December 17th, 1918.

APPLICATION in receivership proceedings for an
adjudication of how much, if any, of a trust fund
formerly held by the treasurer of the State for the
benefit of the policyholders of the insolvent defendant
and now in the hands of the receiver, should be trans-
ferred to the general assets for the payment of creditors
other than policyholders, brought to and tried by the
Superior Court in Hartford County, *Gager, J.;* facts
found and judgment rendered authorizing the receiver
to transfer the sum of $112,235 from the special trust
fund to the account of the general assets, from which
certain policyholder creditors appealed. *No error.*

The Aetna Indemnity Company is a Connecticut
corporation. Its charter was granted by the General
Assembly of 1897 and amended by the same legislative

* Transferred from first judicial district.

body in 1899. Its corporate purposes are fully defined in its amended charter. On January 7th, 1911, when proceedings for the appointment of a receiver were instituted, there was on deposit with the State Treasurer in trust for the policyholders of the Aetna Indemnity Company, under the provisions of § 4264 of the General Statutes, securities inventoried by the appraisers appointed by the Superior Court at $252,480. This fund has been administered in accordance with the provisions of § 4268 of the General Statutes, and as a result of the care and management of the receiver had increased to $328,121.53 on June 1st, 1917. The general assets taken by the receiver on his appointment were $50,042.81. The general receipts of the receivership to June 1st, 1917, were $165,652.73. The expenses up to June 1st 1917, were $168,775.13, which the receiver had paid from the general assets as realized, and the fund derived from the securities deposited with the State Treasurer had been kept intact and the interest thereon allowed to accumulate so that on June 1st, 1917, this trust fund aggregated $328,121.53, while the general assets realized by the receiver had all been disbursed for expenses.

The receiver, in his application for an order apportioning the expenses between the trust fund and the general assets, made a detailed statement to the court of the work and expenditures involved in the liquidation, which is set forth fully in the finding. In addition to the regular work of winding up the estate, the receiver has had charge of this trust fund pursuant to statute, which because of paying all expenses out of the general fund has, as heretofore set forth, increased from $252,480 to $328,121.53. No accurate bookkeeping allotment of expenses and services had been made or was practicable. The trial court reached the conclusion and held "that the expenses . . . should

be apportioned between the special trust fund for the benefit of the policyholders and the general assets as they existed June 1, 1917, in proportion to the amount of such funds in the hands of the receivers on said date, viz: trust fund, $328,121.53; general assets $165,652.73, and that a transfer of such amount be made from the amount of the trust fund to the general fund as will distribute the expense of the receivership pro rata between those two amounts. It so happens that the figures make the proportions approximately two to one, or perhaps a little more accurately, $33\frac{1}{2}$ per cent to be paid from the general assets, $66\frac{1}{2}$ per cent to be paid from the special trust fund; and an order is filed accordingly."

*Albert H. Barclay,* for the appellants (certain policyholder creditors).

*J. Birney Tuttle,* for the appellee (the receiver).

*Harrison Hewitt,* for the appellees (certain general creditors).

RORABACK, J. The brief of the appellants states their case in this way: "The receiver in this case is acting in a dual capacity; he is for general purposes liquidating the affairs of this insolvent corporation; he is for a special purpose, namely, the benefit of the policyholders, administering a trust fund which has been committed to his care by the provisions of the statute." In this connection it is also urged by the appellants, that "as a going concern the policyholders had an interest in all the assets of the corporation and a special lien upon the trust fund; the general creditors had no interest whatsoever in the trust fund, but did have an interest in general assets." Assuming this to

be true, we cannot, under the facts found, appreciate the force of the appellants' contention set forth in their brief, to wit: that the special fund is for the sole benefit of the policyholders, and that no part of this fund can be used for the benefit of the general creditors or transferred to the general assets of the company. As the statement of a principle this may be correct, but as applied to the present case the conclusion drawn therefrom is quite a different matter. If the Indemnity Company were a going concern, solvent, with funds sufficient to meet the expense of liquidation and pay its creditors, the contention of the appellants might be tenable; but it is apparent from the record now before us that this company is hopelessly insolvent, and that its general creditors will receive but little, if anything, for their respective claims.

It is a well-settled principle in the disposition of trust estates, that a trust fund shall bear the necessary expenses of its administration, and that one who conducts a litigation in the right of another for the benefit of such a fund shall be protected in the distribution of it for the expenses incurred by him in the faithful performance of his duty. *International Imp. Fund* v. *Greenough*, 105 U. S. 527. It is stated in Perry on Trusts, that "trustees have an inherent equitable right to be reimbursed [for] all expenses which they reasonably and properly incur in the execution of the trust, and it is immaterial that there are no provisions for such expenses in the instrument of trust. If a person undertakes an office for another in relation to property, he has a natural right to be reimbursed [for] all the money necessarily expended in the performance of the duty." 2 Perry on Trusts (6th Ed.) § 910; Lewin on Trusts (12th Ed.) p. 787.

Section 4264 of our General Statutes, relating to deposits with the State Treasurer, provides that "the

legal title to such securities shall be transferred to him in trust for the policyholders of such insurance company, and he shall hold such securities in trust for said policyholders; but such company may collect and receive the interest and dividends thereon, and withdraw said securities on depositing with the said treasurer other securities of like character and value." Section 4268 provides that such securities may be delivered to a receiver duly qualified, who shall administer the trust fund invested in such securities for the benefit of the policyholders of such company under the orders of the court to which such receiver is accountable. It is unquestionably true that as such receiver he was under an obligation to protect this fund from all unjust claims. We know from the record of the present case, and from records in other cases formerly before this court, of the magnitude and nature of many of the services rendered and the expenditures made by the receiver in protecting this fund in California, Arizona, and other sections of this country. Now it appears that the receiver's services and expenditures resulted in a reduction of these claims about one half million dollars, and that the prospective dividends of the policyholders were more than doubled thereby. This was brought about at the expense of the general assets of the company, and we can see no good reason why the policyholders should not now contribute their fair proportion of these expenses. A claim for reimbursement may be maintained as a right, in the present case, to an equitable contribution by the parties interested in the assets of this insolvent company. This should be made in proportion to their respective interests. It does not appear that such a contribution is unwarranted by our General Statutes relating to this subject. This right to a reimbursement does not rest upon contract, but is based upon equitable principles.

Some-embarrassment has been created owing to the fact that "no accurate bookkeeping allotment of expense . . . has been made or was practicable." But the rights of the parties should not be forfeited on this account. There was evidence from which these amounts could be approximately ascertained, and it became necessary for the trial court to determine, with as much accuracy as the information obtained from the evidence would permit, what portion of the trust funds should be impressed with these expenditures of the receiver. The mode adopted by the court below was sanctioned in the case of *Attorney-General* v. *North American Life Ins. Co.*, 89 N. Y. 94, 106, where it is said: "Of course it is difficult, if not impossible, to reach absolute justice in the proper apportionment of expenses to the two funds, but the mode adopted of a pro rata distribution seems to us just and the best attainable." See also *Matter of Equitable Reserve Fund Life Asso.*, 131 N. Y. 354, 381, 30 N. E. 114.

But few apportionments are capable of mathematical certainty. Many of them depend upon comparative values. The mode of apportionment adopted by the court in this case, although not certain, is as near certainty and as equitable as possible. We have reached this conclusion, not only from the method employed by the trial court, but from other comparisons and percentages that we have obtained by a careful scrutiny of the undisputed facts now before us. The method followed in this case and approved by us seems to have been the one taken by Judge Chester of the Supreme Court of New York in the case of The People v. Metropolitan Surety Co., not officially reported.

There is no error.

In this opinion the other judges concurred.