GEORGE J. BASSETT, STATE BANK COMMISSIONER, *vs.* THE MERCHANTS TRUST COMPANY.

MALTBIE, C. J., HAINES, HINMAN, BANKS AND AVERY, JS.

Argued May 13th—decided July 19th, 1932.

*Francis T. Reeves,* for Citizens and Manufacturers National Bank of Waterbury, receiver.

*Ernest L. Averill,* Deputy Attorney-General, with whom were *Bernard A. Kosicki, H. Roger Jones* and *William H. Nelson,* Assistant Attorneys General, and, on the brief, *Warren B. Burrows,* Attorney-General, for the State Treasurer and the Bank Commissioner.

*John Hamilton King,* for Robert H. Fisk, receiver of The Danielson Trust Company, filed a brief as *amicus curiae,* but did not argue the cause.

MALTBIE, C. J.   This reservation presents certain questions for our advice which grow out of the receivership of the defendant, a state bank and trust company, having three departments, commercial, savings and trust.   The questions are presented in several counts but certain of these, the fifth and seventh, were withdrawn at the argument.   We discuss the situations presented by the other counts separately.

### First Count.

The first question asked in this count is whether it is the duty of the receiver to keep records showing the gross income collected by him on the assets of each

department separately, as had been the custom of the bank before his appointment. To do so will not apparently be difficult and the information will ultimately be of value, if not necessary, in determining the way in which the expenses of the receivership are to be apportioned and, perhaps, for other purposes.

The second question asks whether income collected by the receiver on assets segregated in the savings department should be added to the segregated principal assets in that department and whether depositors in it have a right to such income if necessary to pay their deposits in full. The statute, General Statutes, § 3908, requires the investment of deposits in the savings department in accordance with the requirements of the statutes concerning the investment of deposits in savings banks and provides that "such investments shall be segregated and set apart and not mingled with other assets of such banks or trust companies, and shall be for the exclusive protection of the depositors in such savings department and shall not be liable for or used to pay any other obligation or liability of such bank or trust company until after the payment of all of the depositors in such savings department." The statute contains no requirement that income received upon the assets so segregated shall be devoted to the payment of deposits, or interest upon them, in the savings department. In the case of a savings bank the depositors are the owners of the assets of the bank in proportion to their deposits and the income from its investments is the source from which ordinarily dividends are principally paid. In the case of such a bank as the defendant, the interest paid upon savings deposits is not paid from the income of its investments, but from the general assets of the bank. To require that the income of segregated investments be added to the principal of the fund would mean that this fund

would be indefinitely increased for the protection of the principal of deposits in the department and would have to be held intact, no matter what interest is paid to depositors from the general funds of the bank. This could hardly have been intended by the legislature and no doubt accounts for the omission of any mention of income in the requirement that investments of the savings department be segregated for the exclusive protection of its depositors. *Shippee* v. *Pallotti, Andretta & Co., Inc.,* 114 Conn. 560, 566, 159 Atl. 494. They were not entitled to have such income added to the principal of the segregated fund before the appointment of the receiver and there is no sufficient reason why the receiver should be required now to take such a course. Such income becomes a part of the general assets of the bank, and depositors in the savings department are entitled to share in it with depositors in the commercial department only upon the basis of the balance of their accounts not paid from the proceeds of the segregated fund of that department. *Bassett* v. *City Bank & Trust Co.,* 115 Conn. 1, 27, 160 Atl. 60.

The third question is as follows: "If the principal of segregated assets in the savings department ultimately reduced to cash is sufficient to pay the savings depositors' accounts in full, will accumulated income on savings department assets be properly utilized to pay to savings depositors interest on their savings account, or does such surplus proceeds of collection in the savings department become a general asset of the trust company to meet the general claims of its commercial depositors and its creditors?" In view of the failure in the reservation to present to us the necessary facts we cannot, in answer to so much of the question as deals with the right of depositors to interest on their deposits, say more than we said in *Lippitt* v. *Thames*

*Loan & Trust Co.,* 88 Conn. 185, 206, 90 Atl. 369. The last portion of the question asks advice as to a situation which may or may not arise in the future and an answer to it now would not seem necessary to the determination of any present rights or to be of value for the present practical guidance of any party. We therefore do not answer it.

### Second Count.

In this count we are asked, first, whether the receiver should keep records which will show as far as possible the expenses of administering the receivership incidental to the operation of each department separately; secondly, whether the expenses should be charged to the separate departments in proportion to the value of the assets in each; and thirdly, whether the expenses should be charged generally to income first and upon the exhaustion of income to the assets of the various departments in accordance with their value.

It is a general rule that where a receiver is appointed to conserve assets and ultimately distribute them to those entitled to them the charges of the receivership are to be paid from the fund. 1 Clark, Receivers (2d Ed.) § 637 (a). Where, as in this case, there are distinct estates in the hands of a receiver in which different groups of creditors and claimants have different interests, theoretically the expenses of the receivership on account of each estate should be charged wholly against it. This should be done as regards the expenses of the receivership incurred for the sole benefit of any one department which are capable of distinct application as charges against its funds. The stipulation of facts makes it clear that in this receivership it is not possible as to a large part of the services and expenses incurred by the receiver to regard them as

being for the sole or particular benefit of any one department but the benefit to two or even all the departments is inextricably blended. As to such services and expenses it is an established principle that they should be apportioned to the various funds in the hands of the receiver upon some fair and reasonable basis. *Macdonald* v. *Aetna Indemnity Co.*, 93 Conn. 140, 105 Atl. 331; *Attorney-General* v. *North American Life Ins. Co.*, 89 N. Y. 94, 106; *Matter of E. R. F. L. Association*, 131 N. Y. 356, 381, 30 N. E. 114; *Central Trust & Savings Co.* v. *Chester County Electric Co.*, 9 Del. Ch. 247, 80 Atl. 801; *Franklin Lumber Co.* v. *Anderson, Inc.*, 104 N. J. Eq. 306, 145 Atl. 477; *American Pig Iron Storage Warrant Co.* v. *German*, 126 Ala. 194, 243, 28 So. 603; 53 Corpus Juris, 303. The receiver need not attempt to keep records which will allocate among the funds expenses of this nature as they are incurred. When the proper time comes to settle the affairs of the defendant it will then be necessary to apportion such expenses among the various departments but an equitable apportionment will require a consideration of the nature of the services rendered and the reasonable proportion of benefit to each department and very likely other circumstances. It will present a question best solved by the exercise of a sound judgment by a trial court in view of all the facts. We cannot now forecast what those circumstances will be and cannot give advice as to the basis upon which the apportionment should be made. Interim payments, if any, should be made from the funds of different departments, only subject to readjustment upon the final settlement of the estate. The duty of the receiver is to keep such records as will enable any expenses incurred for the exclusive benefit of any department and capable of distinct application to it ultimately to be charged against it and as will afford the

basis for an equitable apportionment of other expenses among the departments at the settlement of the estate. Beyond this we cannot give advice at this time.

### Third Count.

Under this count we are asked to advise as to the validity of a tax assessed against the defendant based upon the amount of deposits in the savings department on January 1st, 1932, under the provisions of §§ 1285 and 1287 of the General Statutes. On December 23d, 1931, the plaintiff bank commissioner issued a restraining order against the defendant under the provisions of § 3870 of the General Statutes. On December 24th, 1931, he brought the present action and the Citizens and Manufacturers National Bank of Waterbury was thereupon appointed temporary receiver, qualified and took possession of all the assets of the defendant. On January 21st, 1932, it was confirmed as temporary receiver and on February 5th, 1932, confirmed as permanent receiver and qualified as such. Since its appointment as temporary receiver it has continued to administer the estate and affairs of the defendant. The situation so presented differs essentially from that before us in *Shippee* v. *Riverside Trust Co.*, 113 Conn. 661, 671, 156 Atl. 43, where, prior to the day as of which the tax was levied, the bank commissioner had issued a restraining order but receivership proceedings were not begun until after that date and we said (p. 673): "The restrictions to which the present defendant was subject on January 1st, 1931, . . . consisted of a 'temporary order,' for which, only, § 3870 of the General Statutes, under which it was issued, provides, restraining the company from 'paying out funds or receiving deposits.' Otherwise its right to exercise its franchise remained unaffected on January 1st and until the inception of the receivership

on January 6th." The present case is in all material particulars the same as those before us in *Shippee* v. *Commercial Trust Co.* and *Naugatuck National Bank* v. *State Board of Equalization,* both reported 115 Conn. 313, 161 Atl. 781. It is true that in both of those cases a permanent receiver had been appointed before the day as of which the tax was levied, but in the present case, by the appointment of a temporary receiver before that day, who took possession of the assets of the defendant and has since administered its affairs, the defendant was "effectively and wholly disabled from conducting a savings department as a corporate enterprise and deprived of any profit or benefit to be derived therefrom." *Shippee* v. *Commercial Trust Co.,* 115 Conn. 313, 324, 161 Atl. 781. The opinion in that case establishes that there is no tax due the State under the assessment in question. The other questions asked in this count would be material only if the tax were held to be valid and it is not necessary to answer them.

## Fourth Count.

The facts reserved under this count present the following situation: Prior to the suspension of the defendant it had loaned to its customers certain sums of money which were evidenced by notes that were included as part of the principal segregated assets of the savings department. At the time of the loan the borrower presented to it as collateral security for payment of the note his savings deposit book evidencing a deposit in the defendant, with an order authorizing it to appropriate the deposit in full payment of the loan. Upon the suspension of the defendant the receiver found that there were many promissory notes, which were part of the assets of the savings department and accompanied by savings department pass-

books held as such collateral security. The contract between the defendant and the borrower was that in the event that the note with interest was not paid upon maturity the defendant might forthwith apply the savings deposit evidenced by the passbook as collateral in liquidation of the principal and interest of the matured note. We are asked, has the maker of a note held as an investment of the savings department and who has pledged his passbook evidencing a deposit in that department a right of set-off of the deposit against the note? If there is no set-off under the above set of facts, is the transaction one in which the receiver may only apply to the payment of the note dividends declared and payable to the maker upon his savings deposit and is the passbook to be treated merely as collateral security, upon which the receiver may realize only to the extent of the dividends declared on the deposit?

The money represented by these notes was loaned to the makers from assets of the savings department and the notes became investments of that department which under the provisions of § 3908 of the General Statutes are required to be segregated and set apart for the protection of depositors in it and in which they all have equal rights. *Bassett* v. *City Bank & Trust Co., supra,* p. 7. The situation in no essential respect differs from one where a loan is made from the funds of that department and a savings bank book in another bank is presented as collateral security. The defendant in these instances is not relegated solely to the deposit represented by the book as the source from which the notes are to be paid. The apparent purpose of the transaction was to save the depositors the interest which would be lost should they withdraw their deposits. The defendant could not apply the deposit represented by the book to the payment of the

note before its maturity. *Daly Brothers, Inc.* v. *La Croix*, 114 Conn. 94, 96, 157 Atl. 735. Indeed, such application of the deposit would be to defeat the very purpose of the transaction. The situation is very different from that before us in *Osborn* v. *Byrne*, 43 Conn. 155, 160, where money was deposited in the savings bank not as an ordinary deposit but for the purpose and with the intention, to the knowledge of its officers, of applying it to the payment of a note given by the depositor to it, and we regarded the deposit as in effect a payment upon the note. There is nothing in the situation presented to us here to take this case out of the ordinary rule which denies a right of set-off of a deposit in the savings department of such a bank as the defendant to a depositor who is indebted to it upon a note representing a loan from its funds. Upon the maturity of the note, the receiver is entitled to apply upon the debt any sums becoming due by reason of dividends declared in the receivership.

### Sixth Count.

The sixth count presents certain situations where a depositor in the defendant bank uses a trade name and either has a deposit in that name and is indebted to the bank upon a note executed in his real name or has a deposit in his real name but is indebted to it upon a note signed with his trade name. We are asked whether there is a right of set-off in such cases. The answer, too obvious to need argument, is that in both situations the same individual is depositor in the bank and indebted to it upon the note. and should have the same, and no greater, right of set-off as he would have if the deposit stood in and the note was signed with his true name.

We therefore answer the questions asked as follows:

First Count. Question A we answer "Yes"; question B we answer "No"; question C we do not answer. Second Count. In response to question A we say: It is the duty of the receiver to keep such records as will enable any expenses incurred for the exclusive benefit of any department and capable of distinct application to it ultimately to be charged against it, and which will afford the basis of an equitable apportionment of other expenses among the departments at the settlement of the estate. Questions B and C we do not answer. Third Count. Question A we answer "No"; this makes it unnecessary to answer the other questions asked. Fourth Count. Question A we answer "No." In response to question B we say, upon the maturity of any of the notes the receiver is entitled to apply upon the debt any sums becoming due by reason of dividends declared in the receivership. Sixth Count. In response to the question asked in this count we say that the depositor has the same, and no greater, right of set-off as he would have if the deposit stood in and the note was signed with his true name.

No costs in this court will be taxed to either party.

In this opinion the other judges concurred.