GEORGE J. BASSETT, BANK COMMISSIONER, *vs.* THE MERCHANTS TRUST COMPANY.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued June 23d—decided August 9th, 1932.

*Francis I. Reeves,* for The Citizens' and Manufacturers' National Bank of Waterbury, Receiver of the defendant.

*Frederick H. Wiggin* and *Huntington T. Day,* for the Reconstruction Finance Corporation.

BANKS, J.  On December 23d, 1931, the bank commissioner issued an order restraining The Merchants Trust Company from the continued exercise of its corporate franchise, and on December 24th, 1931, The Citizens' and Manufacturers' National Bank of Waterbury was appointed temporary receiver of the defendant, was thereafter appointed permanent receiver, and has duly qualified as such and is now acting in that capacity.  The Congress of the United States has passed an Act under the terms of which there has been organized a corporation entitled "Reconstruction Finance Corporation" for the purpose of providing credit to banks and other organizations coming within the purview of its corporate organization.  The receiver herein is one of the persons entitled to apply for a loan from that corporation.  Upon the suspension of the defendant, it had deposits in its savings department in the sum of $3,649,433.58, and segregated assets for the security of the depositors in that department consisting of securities, mortgage loans, collateral loans and bills discounted equal in amount at book value to the face amount of such savings deposits, and appraised by the appraisers at $3,054,-

304.06.   One million nine hundred thousand dollars of the book value of these assets consists of first mortgage loans on real estate, the appraised value of which is $1,884,500.   The segregated assets are not readily reducible to cash and this is particularly true of the mortgage loans.   In order to make any distribution to the depositors in the savings department it is necessary that the assets be reduced to cash, or that they be used as the basis of a loan so that an early payment may be made to such depositors.   If such loan were made by the Reconstruction Finance Corporation it could run for not to exceed three years, which time might be extended for a period of not more than five years from the date of the original loan.   The loan would have to be secured by agreed portions of the segregated assets as collateral, and the cost of the loan would probably not exceed the income which the receiver would obtain from the securities deposited as collateral.

In the stipulation for reservation it is stated that such loan could be utilized either to pay an immediate dividend to depositors of the savings department or to facilitate the reorganization of the defendant.   We are informed by counsel that a reorganization of the company is not now contemplated, and that the amount to be borrowed, which has been reduced from $1,000,000 to $500,000, will be devoted to the payment of dividends to depositors in the savings department.

The questions upon which our advice is now desired are, in substance:   (1) Has the Superior Court jurisdiction and power to authorize the receiver to borrow money from the Reconstruction Finance Corporation to pay a dividend to the savings depositors of the Trust Company, and pledge segregated assets of its savings department as collateral for the loan?   (2) If such loan is made, will it be repayable as part of the

charges and expenses of settling the affairs of the Trust Company, and chargeable solely against the assets of its savings department and in preference to any payment to be made to depositors of all classes?

The Superior Court is a court of general equitable jurisdiction and as such has power to appoint receivers and make such orders in the receivership proceedings as the exigencies of the case may require. This includes the power, frequently exercised in ordinary receiverships, to authorize receivers to borrow money to carry on the business of the corporation. A receiver of a bank or trust company may be appointed, as in the present case, in an action brought by the bank commissioner under General Statutes, § 3869, upon an application by the attorney general under General Statutes, § 3873, or upon petition by stockholders under General Statutes, § 3920. Section 3922 defines the general duties of such receivers, and provides that they may apply to the court for advice, and that the court may, of its own motion or on complaint of any interested party, "make all necessary and proper orders as to the proceedings of such receivers." We find nothing in our statutes regarding receivership proceedings in the case of banks and trust companies which limits the general equity powers of the court in receivership cases, and the statutory provisions governing receiverships in general are applied in practice, so far as appropriate, to bank receiverships. It being within the general equity powers of the court to authorize a receiver to borrow money, the Superior Court has jurisdiction and power to authorize the receiver of The Merchants Trust Company to borrow money from the Reconstruction Finance Corporation.

The receiver proposes to borrow this money for the purpose of paying a dividend to the depositors in the savings department of the Trust Company. Ordi-

narily a court would not feel justified in authorizing the receiver of an insolvent corporation to borrow money with which to pay dividends to creditors. Sound business policy would dictate that ordinarily the assets of an insolvent bank should not be further encumbered but should be liquidated as speedily as possible. But this is not the ordinary situation. The stipulated facts disclose a situation in which the money of the depositors is largely invested in mortgage loans and collateral loans, an attempt to enforce immediate collection of which would under present conditions be futile, or would in all probability result in substantial loss to the estate. It was to meet similar conditions, existing throughout the country, that the Reconstruction Finance Corporation was created, through which the resources of the Government are made available, among other purposes, to enable receivers of such institutions to make present payments of dividends to depositors, and by extending the time for liquidation of their "frozen" assets avoid the losses which would follow a forced realization upon them under present market conditions. In effect a receiver is thus enabled to convert these assets into cash with resulting benefit to all parties concerned. No reason occurs to us why it is not within the power of the court, in a proper case and under conditions imposed by it, to authorize its receiver to borrow from the Reconstruction Finance Corporation for such purpose. In the case of *Riches* v. *Hadlock, Bank Commissioner* (Utah) 15 Pac. (2d) 283, decided April 26th, 1932, the court held that the bank commissioner as statutory liquidator of a state bank was not authorized to borrow money from the Reconstruction Finance Corporation and pledge the assets of the bank to secure its payment. The decision was based upon statutory provisions which the court held had taken from the court its chancery prerogatives

in the appointment of receivers for banking institutions and in directing and controlling them as officers of the court. It held that the bank commissioner acted, not as an officer of the court, but as an appointee of the law under the statute, that his custody of the property was not the custody of the court, and that since there was nothing in the statute which conferred upon him authority to borrow money and pledge the assets of the bank as security for its payment, he had no such power. In *Martin* v. *Citizens Bank* (1932) 134 Kan. 650, 8 Pac. (2d) 81, the Supreme Court of Kansas held that the directors of a bank which was in the hands of the bank commissioner, but for which a receiver had not been appointed, had, under the applicable statutory provisions, power to borrow money from the Reconstruction Finance Corporation for business purposes and pledge assets of the bank as collateral. In *Blades* v. *Hood*, 203 N. C. 56, 164 S. E. 828, decided June 15th, 1932, the commissioner of banks was in possession of an insolvent state bank under a statute which prescribed his powers and duties as liquidator. The court held that, though he was not acting as a chancery receiver in liquidating the affairs of the bank, a court of equity might empower him to exercise the functions of a chancery receiver in matters which were not inconsistent with his statutory duties, and might therefore, in the exercise of its equitable jurisdiction, authorize him to obtain a loan from the Reconstruction Finance Corporation and pledge the assets of the bank as collateral.

Power to authorize a receiver to borrow money carries with it power to authorize him to pledge the assets of the trust estate as collateral for the loan. The question of the power of the court to authorize a receiver of a private financial corporation to borrow money and give security, which will be a charge on

the assets in preference to lien holders, as to which the authorities are not in entire agreement, does not arise here, since it does not appear that any rights of lienors are here involved, other than the statutory rights of the savings depositors, and by the terms of the proposed loan the claim of the lender would be subject to existing liens and encumbrances, if any.

The further questions propounded as to the assets against which the repayment of the loan should be chargeable are answered by the terms of the proposed agreement with the Reconstruction Finance Corporation, since the repayment of the loan must be in accordance with the obligations assumed by the receiver thereunder. It is provided therein that the liability for this loan shall constitute "a first charge against all the assets of the trust (subject to administration thereof in accordance with law, to the expenses of such administration, and to existing liens and encumbrances), and is further secured by a first and paramount lien upon those assets specifically pledged hereunder." This proposed loan is for the sole benefit of the depositors in the savings department of the Trust Company, and it should not, and it is not proposed that it should, affect in any way the rights of the commercial depositors or other creditors. It is stated in the brief of the Reconstruction Finance Corporation that it is the intention of the parties that the liability for the loan is to be a charge only against the assets in which the savings depositors have an interest and only to the extent of that interest, and that it is willing that the wording of the agreement be changed to make that clear. This should be done, and it should specifically provide that the lien upon the income received upon the pledged securities shall attach only to the extent of the interest of the savings depositors in such income. *Bassett* v. *Merchants*

*Trust Co.*, 115 Conn. 364, 161 Atl. 785. This should also clearly appear in any other instruments executed in connection with the making of the loan. The form of note attached to the agreement provides for interest upon the loan at the rate of five per cent. This will be a charge upon the segregated assets of the savings department. The income from those assets becomes a part of the general assets of the Trust Company. *Bassett* v. *Merchants Trust Co., supra.* It should therefore be provided that the interest upon the loan be paid out of the principal of the segregated assets. The proposed agreement also provides that, in using the proceeds of the loan to pay a dividend to savings depositors, the receiver will make such payment by check upon the back of which will be an endorsement to be executed by the depositor assigning his claim against and interest in the assets of the receivership estate to the Reconstruction Finance Corporation as security for the loan until the corporation shall have received out of the depositor's distributive share reimbursement of the amount received by him from the loan. The depositors in the savings department have an exclusive right to the assets segregated in that department for their benefit, and have also the right to share *pari passu* with the commercial depositors in the proceeds of the general assets of the Trust Company in the hands of the receiver to the extent that they are not paid in full out of the segregated assets in the savings department. *Lippitt* v. *Thames Loan & Trust Co.*, 88 Conn. 185, 193, 90 Atl. 369. By the assignment which the savings depositors will execute, if the loan is not fully paid out of the pledged assets, the remaining portion of the segregated fund will be subject to a first charge for its repayment in full, and the Reconstruction Finance Corporation will also have recourse to all the rights which the savings depositors

would otherwise have in and to the general assets of the Trust Company. Thus the funds to which the Reconstruction Finance Corporation may look for repayment of its loan are: First, the pledged collateral; second, all the remainder of the segregated fund; and third, the interest of the savings depositors in the remaining assets of the Trust Company, all these funds save the first being subject to the prior claims of the receiver for administration expenses.

The power of the Superior Court to authorize the receiver to negotiate a loan for the purpose of paying an early dividend to the savings depositors, and to pledge a portion of the segregated fund as collateral for the loan, would seem to be clear. Whether such action is, under all the circumstances, advisable as a matter of sound business policy, and whether the terms upon which the loan can be obtained are so advantageous to the estate as to justify a conclusion that the making of the loan will be for the best interests of the savings depositors, are serious questions for the consideration of that court in the exercise of its equity powers in the receivership proceeding. If there are any creditors entitled to priority, their interests should of course be protected. Any application for permission to negotiate such a loan should be heard only after notice to all parties of record, including creditors claiming a preference, if any, and the order authorizing the loan should set up the conditions surrounding it, and determine the method of repayment and the priorities to be accorded it as against the respective funds in the hands of the court for administration, so as to preserve the statutory rights of all parties in interest.

To questions A and C we answer "Yes." An answer to question B is not now desired. Our answer to questions D, E, F, and G, is that repayment of the loan

is to be made, and chargeable against the funds payable to the savings depositors, in the manner and order stated herein.

No costs shall be taxed in this court.

In this opinion the other judges concurred.