T. C. WILSON V. THE FIRST STATE BANK OF JETMORE.

No. 15,326.    (95 Pac. 404.)

SYLLABUS BY THE COURT.

BANKS AND BANKING—*Voluntary Liquidation—Failure to Make Financial Reports—"Doing Business"—Power to Sue as a Corporation.* In 1892 the First State Bank of Jetmore was chartered for all the purposes then permitted by law to banking corporations. It commenced business and continued to operate as a banking corporation until 1897. It then went into voluntary liquidation, paid off its depositors, surrendered to the bank commissioner the certificate of authority to transact business which it had obtained from him, and ceased to transact any business except to collect what it could of the debts owing to it and to distribute the proceeds among its stockholders by way of closing up its affairs. In 1905 it brought a suit upon a promissory note given to it in 1896. *Held:* (1) The bank continued to be a banking corporation after the steps taken in 1897, as before. (2) The period for which the bank was chartered not having expired, no forfeiture having been suffered, and no judgment of dissolution having been rendered

against it, the corporation is still in existence. (3) The bank had capacity to sue as a banking corporation when the action referred to was instituted. (4) After the bank had paid its depositors and had surrendered its certificate of authority to do business it was no longer subject to the provisions of the banking act requiring reports of its financial condition to be made to the bank commissioner. (5) After the steps taken in 1897 the bank was not "doing business" within the meaning of section 1283 of the General Statutes of 1901, requiring financial statements to be filed with the secretary of state as a condition precedent to the maintenance of an action or the recovery of a judgment. (6) The bringing of the suit referred to did not constitute "doing business" within the meaning of the statute just cited.

Error from Hodgeman district court; WINFIELD H. SHELDON, judge *pro tem.* Opinion filed April 11, 1908. Affirmed.

*F. Dumont Smith,* for plaintiff in error.

*T. F. Garver,* and *R. D. Garver,* for defendant in error.

The opinion of the court was delivered by

BURCH, J.: The First State Bank of Jetmore obtained a judgment against T. C. Wilson upon a promissory note, dated August 28, 1896, and given to the bank by a partnership of which Wilson was a member. The validity of this judgment depends upon the following facts found by the district court:

"(1) That the First State Bank of Jetmore, plaintiff in this action, obtained a charter from the secretary of the state of Kansas, April 19, 1892; that its place of business was Jetmore, Hodgeman county, Kansas, the purpose of the corporation being that of receiving money on deposits and to allow interest thereon, giving to the person depositing credit therefor, and buying and selling exchange, gold, silver, foreign coin, bullion, current money, bonds of the United States and state of Kansas, bonds and warrants of cities, counties and school districts in the state of Kansas, of loaning money on real estate, chattel and personal security at a rate of interest not exceeding the

legal rate allowed by law, of discounting negotiable notes and notes not negotiable, and to own a suitable building, furniture and fixtures for the transaction of its business of the value not to exceed one-third of the capital of such bank, which was fixed at $10,000, divided into shares of $100 each—the duration of such banking corporation as fixed in said charter being twenty-five years; that it commenced business as such banking corporation in 1892, and continued to operate under said charter as a banking corporation until 1897.

"(2)   In February, 1897, it voluntarily proceeded to liquidate and wind up its affairs as a bank, and on December 7, 1897, there was filed in the office of the bank commissioner of the state of Kansas an official statement showing the financial condition of said bank at the close of business November 29, 1897, and said bank surrendered to the bank commissioner of the state of Kansas its certificate to transact business as a bank that had been issued to it by the bank commissioner January 4, 1892.

"(3)   Since December 7, 1897, it has not made any reports to the bank commissioner of the state of Kansas or to the secretary of state regarding its condition, and no requests have been made upon the officers of said corporation for a report as to the condition of the affairs of said corporation.

"(4)   After said bank commenced to liquidate, in February, 1897, it did not receive deposits, and before December 7, 1897, it had paid all of its depositors in full, and since November 17, 1897, it has never received deposits or paid out money on deposits or renewed any notes—in fact has not transacted any business as a bank, and since that time C. E. Wilson, who was then cashier of said bank, has transacted what business has been transacted—that is, collected such of the indebtedness due the bank as he could, and paid the proceeds so collected to the stockholders of the corporation in closing up the affairs of the bank."

The questions argued relate to the corporate character and existence of the plaintiff, to its capacity to bring suit, and to its right to sue without rendering statements respecting its financial condition either to the bank commissioner or to the secretary of state.

The only way to determine the class to which a cor-

poration belongs is to look at its charter. The very purpose of that document is to establish the nature and character of the corporation and to fix its constitution as an organization for manufacturing, for banking, or for some other defined purpose; and so long as its charter stands unrevoked and unmodified the intrinsic nature and character of the corporation remains unchanged. Reading the plaintiff's charter as epitomized in finding No. 1 with the banking act in force when the charter was granted (Laws 1891, ch. 43), it is plain that the plaintiff organized as, and actually became, a banking corporation and nothing else. So far as the findings of fact disclose, this charter has never been amended, and if the corporation is still in existence it is still a banking corporation.

At the time the plaintiff organized, and ever since, there have been but three ways in which the corporate existence of a banking corporation might be terminated —by expiration of the period for which it was chartered, by a judgment of dissolution in voluntary proceedings to that end, and by forfeiture and judgment of dissolution in an adversary proceeding. None of these things has occurred, and the plaintiff is still a banking corporation.

Although organized and in existence from the date its charter is filed (Laws 1891, ch. 43, § 3; Laws 1897, ch. 47, § 3; Gen. Stat. 1901, §409; *The State v. Mason,* 61 Kan. 102, 107, 58 Pac. 978,) a banking corporation can do nothing except to elect officers, approve bonds and receipt for stock subscriptions and the like until it is authorized to commence the real business of banking by the certificate of the bank commissioner. So that at the beginning we have a banking corporation chartered, existing and organized for business, but unable to take a single step in the substantial attainment of its corporate ends. After a certificate has been secured from the bank commissioner the corporation may do everything its charter and the law authorize, and it may continue to do this as long as it is in existence, is solvent,

obeys the law and retains the certificate given by the bank commissioner.

Of course the distinctive feature of the banking business is the receiving of other people's money on deposit subject to check, or on certificates or other obligations of the bank, and it is this fact, and the using of such money by the bank to its own profit, which make regulation and supervision by the bank commissioner necessary. But a banking corporation may loan money on real estate, chattel and personal security, and may discount notes, negotiable and non-negotiable; that is, among numerous things which it may do is the power to conduct a loan and a discount business. In the course of time a banking corporation may desire to discontinue all business except that of conducting a loan and discount business with its own money. If so it may pay off its depositors, discharge all its liabilities and surrender its certificate of authority to do a general banking business, whereupon it may continue to transact a loan and discount business. (Laws 1897, ch. 47, § 30; Gen. Stat. 1901, § 436.) If a banking corporation do this its charter powers are not affected; its corporate character is not changed, and its corporate organization is not modified. It is still a banking corporation the most of whose powers are suspended and whose remaining activities are restricted to a circumscribed field. If it should again desire to resume a general banking business it would not be necessary for it to obtain a new charter. It would still possess that right as an original power. It would only be necessary for it to obtain a new certificate from the bank commissioner.

If the banking corporation desire to give over the prosecution of all the purposes for which it was organized and to wind up its affairs, it may do so. When all its liabilities have been paid and its certificate from the bank commissioner has been surrendered the bank commissioner has no further concern with it, but its corporate integrity remains unimpaired and it may con-

38—77 KAN.

tinue to collect its assets and to pay the proceeds to its stockholders, all as a banking corporation, until it has been dissolved or until its charter has expired. (Morawetz, Corp., 2d ed., §§ 411, 1003; *Bank v. Sewing Society*, 28 Kan. 423; *Warner v. Imbeau*, 63 Kan. 415, 419, 65 Pac. 648; *Rosenblatt v. Johnston*, 104 U. S. 462, 26 L. Ed. 832; *Merchants' Nat. Bank of Minneapolis v. Gaslin*, 41 Minn. 552, 43 N. W. 483.) There can be no doubt that the plaintiff had capacity to sue when this action was commenced.

So long as a banking corporation is doing business under the supervision of the bank commissioner it reports to him. When it surrenders the certificate of authority given by the bank commissioner, its depositors having been paid, it ceases to be subject to the provisions of the banking act, except that the bank commissioner may make examinations to determine if all its liabilities have actually been paid. (Laws 1897, ch. 47, § 30; Gen. Stat. 1901, § 436.) Therefore the plaintiff was not in default of statements to the bank commissioner when this action was instituted.

The general corporation law reads as follows:

"It shall be the duty of the president and secretary or of the managing officer of each corporation for profit doing business in this state, except banking, insurance and railroad corporations, annually, on or before the 1st day of August, to prepare and deliver to the secretary of state a complete detailed statement of the condition of such corporation on the 30th day of June next preceding. . . . No action shall be maintained or recovery had in any of the courts of this state by any corporation doing business in this state without first obtaining the certificate of the secretary of state that statements provided for in this section have been properly made." (Gen. Stat. 1901, § 1283.)

It is not now necessary to determine the applicability of this statute to the case of a banking corporation which has surrendered to the bank commissioner the certificate received from him and which then proceeds to transact a loan and discount business. In

view of the general policy of both the banking and general corporation acts it might be easy to say that the words "banking . . . corporations" in the exception clause of the section just cited mean "banking corporations conducting a general banking business under a certificate of authority from the bank commissioner," but that lawsuit may wait until it is properly presented for decision. We have here the case of a banking corporation which has paid its depositors and has surrendered its certificate, which has not engaged in the loan and discount business, which has done no business since 1897 except to collect its assets and distribute the proceeds to its stockholders in the process of winding up its affairs, and which as an incident to liquidation brings an action upon a promissory note given to it while it was a going concern. Was it "doing business" when the action was brought, or was it "doing business" in bringing the action, within the meaning of the statute?

The very terms of the statute discriminate between maintaining actions and doing business, and the only rational meaning of "doing business" is the carrying on of the operations of the corporation, or some portion of them, in the usual and regular course of the prosecution of the corporate enterprise for profit. Corporations are organized to run, not for the purpose of being brought to an end; and it is the ordinary display of corporate life which the statute covers, not the necessary functions attending corporate extinction. The primary purpose of the financial statements required to be filed is the protection of those who may be financially interested in the solvency of the corporation. The members of the general public and the state are no longer concerned when the business of a corporation is reduced to matters between it and persons who are indebted to it and between it and its stockholders. The reason for the regulation then ceases to apply. The words "doing business" mean the same whether the corporation be domestic or foreign. Judicial interpretations in cases

where foreign corporations have been concerned are very numerous and are substantially harmonious. Lists may be found in volume 19 of the Cyclopedia of Law and Procedure, at page 1280, and in other parts of that work indicated by the cross-references, in volume 13 of the American and English Encyclopedia of Law, at page 869 *et seq.*, and in volume 3 of Words and Phrases Judicially Defined, at page 2155. It is universally held that bringing or maintaining actions does not constitute the doing of business within the meaning of these provisions and that the phrase is intended to comprehend only the exercise of corporate functions in the attainment of the ends for which the corporation was organized.

It follows that the plaintiff was not in default of statements of its financial condition to the secretary of state when it sued the defendant, and from all that has been said it must be concluded that the plaintiff had the right to obtain the judgment which was rendered in its favor.

Some arguments are advanced based upon testimony in the case respecting which the court made no finding of fact. They cannot be considered. (*Shuler v. Lashhorn,* 67 Kan. 694, 74 Pac. 264.)

The judgment of the district court is affirmed.