LESTER E. SHIPPEE, BANK COMMISSIONER, *vs.* COMMERCIAL TRUST COMPANY.

THE NAUGATUCK NATIONAL BANK, RECEIVER OF THE NAUGATUCK BANK AND TRUST COMPANY, *vs.* THE STATE BOARD OF EQUALIZATION.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, JS.

Argued May 13th—decided July 12th, 1932.

*Ernest L. Averill,* Deputy Attorney-General, with whom were *Bernard A. Kosicki, H. Roger Jones* and *William H. Nelson, Assistant Attorneys General,* and, on the brief, *Warren B. Burrows,* Attorney-General, for the appellant (the State).

*Donald Gaffney,* with whom, on the brief, was *Bernard F. Gaffney,* for the appellee (Frederick A. Searle, receiver).

APPEAL of the Naugatuck National Bank, receiver of the Naugatuck Bank and Trust Company, from the assessment of a like tax, brought to the Superior Court in New Haven County and reserved by the court (*Jennings, J.*) for the advice of this court.

*John F. McDonough* and *William W. Gager,* for the appellant (plaintiff).

*Ernest L. Averill,* Deputy Attorney-General, with whom were *Bernard A. Kosicki, H. Roger Jones* and *William H. Nelson,* Assistant Attorneys-General, and, on the brief, *Warren B. Burrows,* Attorney-General, for the State Treasurer.

HINMAN, J. The first question reserved in The Naugatuck Bank and Trust Company case is as follows: "Is The Naugatuck National Bank, as receiver of The Naugatuck Bank and Trust Company liable for the payment of a tax in accordance with Sections 1285 and 1287 of the General Statutes, computed on a basis of the amount of deposits on hand as of January 1, 1932?" The answer thereto is determinative of both cases, argued together in this court. The mate-

rial facts concerning the appointment of the respective receivers and their powers and acts thereunder will be stated hereafter in appropriate connection. It suffices for present purposes to note that both receiverships were in full force and effect on January 1st, 1932. On that date, the finding in the Commercial Trust Company case states, the deposits in the savings department amounted to $913,242.94; the amount exempt from tax was $52,500; "the amount claimed by the State of Connecticut as taxable under Sections 1285 and 1287 . . . was $860,742.94;" the total amount of tax claimed is $2151.86, one half due February 20th, 1932, and the balance July 20th, 1932. The trial court reached the conclusion that the receiver was not liable for the payment of this tax, and error is assigned that the facts do not support this conclusion, especially in that the defendant bank, on January 1st, 1932, was an existing corporation, was not restrained from transacting business, and had not dissolved or forfeited its charter.

In The Naugatuck Bank and Trust Company case the stipulation sets forth that the bank had maintained a savings department; that the tax commissioner requested the permanent receiver to file a sworn statement pursuant to §§ 1285 and 1287; that the receiver, under date of January 20th, 1932, rendered a statement accompanied by a letter maintaining that no tax was due; that thereafter the tax commissioner incorporated the information contained in the statement in a printed form regularly used for the purpose of making returns in compliance with §§ 1285 and 1287, and on February 25th, 1932, the board of equalization notified the receiver that the board confirmed the assessment of a tax in the amount of $636.55.

These cases as presented here require determination whether the tax in question is upon franchise, like

that imposed under § 1285, or upon property, and, if the former, whether, in the situations disclosed by the facts, such a franchise tax is applicable, and collectible from the receivers. Decision as to the nature of the tax necessitates consideration of both § 1285 and § 1287. These are printed as a footnote to *Shippee* v. *Riverside Trust Co.,* 113 Conn. 661, 665, 156 Atl. 43, 44, and need not be repeated here.

Section 1285 originated as § 18 of Chapter 47 of the Public Acts of 1851, supplanting a prior statute (Chap. 51, Public Acts, 1846) which subjected deposits in savings banks in excess of $250 to a tax assessed in the town where the depositor resided. The Act of 1851 required treasurers of savings banks and savings associations annually on the first day of July, or within ten days thereafter, to make to the comptroller of public accounts a statement of the total amount of all deposits on that day and to pay to the state treasurer "for the use of the State, a sum equal to one-eighth of one per cent, upon the total amount of deposits," which shall be in lieu of all other taxes upon such institutions, or deposits therein. Various amendments in matters of detail not affecting the general plan and nature of the tax were made in 1857, 1859, and 1862 (Chap. 55, Public Acts, 1862). Then the statute was subjected to careful judicial scrutiny and consideration by this court and by the Supreme Court of the United States, and it was decisively determined that the tax imposed was one upon the franchise and not on the property of the defendant bank. *Coite* v. *Society for Savings* (1864) 32 Conn. 173; *Society for Savings* v. *Coite,* 73 U. S. (6 Wall.) 594, 18 L. Ed. 897. This court pointed out (p. 185) that savings banks act under charters from the State which confer privileges of great value, and the State by statute and supervision safeguards and protects

their interests, also grants important exemptions from other forms of taxation. In return for these privileges an equivalent is exacted in the payment in the form prescribed by the statute, which adopts as a rule of assessment the amount of deposits on hand at particular times. It provides for no valuation of property and it takes no notice of the manner in which the deposits are invested or whether they are invested at all. "The tax is not imposed on the securities, but on the bank; and it is not imposed on the bank because of its holding the securities, but in consequence of its doing, under the favor of the State, certain business which that favor renders profitable. The tax is a payment for the benefit. It is proportionate to the extent of the business, and the amount of the deposits is the index or measure of that extent." (p. 187 of 32 Conn.). "The tax is laid . . . on the corporation for its facilities of business, and not on its assets." (p. 188). In affirming this view the United States Supreme Court notes that, in the statute, "reference is evidently made to the total amount of deposits on the day named, not as the subject-matter for assessment, but as the basis for computing the tax required to be paid by the corporation defendants. They enjoy important privileges, and it is just that they should contribute to the public burdens. . . . Neither investment nor the value of the deposits being mentioned in the provision, it seems clear that they are unimportant in this investigation, as the amount of the tax is the same whether the deposits, on the day named, have or have not been invested, and whether they are above the par value or of no value at all. Moneys received constitute deposits in the sense in which the word is used in that provision, and the total amount of such deposits on that day furnishes the true basis of computation, wholly irre-

spective of their market value or of the disposition made of the funds by the defendants." *Society for Savings,* v. *Coite, supra* (pp. 903, 904, L. Ed.). See also *Provident Institution for Savings* v. *Massachusetts,* 73 U. S. (6 Wall.) 611, 18 L. Ed. 907.

The statute which is now § 1285 was thus decisively construed as imposing on savings banks a franchise tax, and in 1878 (Chap. 64, Public Acts) an insertion was made in the statute itself expressly denominating the tax as on the bank's corporate franchise, computed upon the amount of its deposits after making the specified deduction. We have adverted to the foregoing extent to the reasoning supporting the conclusion that the savings bank tax is on franchise instead of on property, for the reason that we regard these considerations as applicable also to the contention now made that the tax on savings deposits under § 1287 is a property tax.

The genesis of § 1287 was in a provision of § 2, Chapter 85, Public Acts, 1907, that "banks and trust companies shall pay to the State on all savings deposits the same tax which is required to be paid by savings banks by section 2422 of the General Statutes [1902, now § 1285, General Statutes, 1930] . . . on the savings deposits held by them, and such savings deposits shall be exempt from all other taxation." The intent of the General Assembly manifested by the reference to the savings bank tax statute in lieu of detailed separate provisions was to impose the "same" tax in nature as well as in all other applicable respects, upon other banks and on trust companies. We can discover no justification for the limitation of identity, now suggested, to the rate and the exemptions only, to the exclusion of the nature and other attributes of the tax. Had a different tax been intended there would have been no difficulty in making a clear designation,

as witness the Act of 1915, Chapter 301, now §§ 1288 and 1289 of the General Statutes, taxing savings deposits in national banks. The effect and result was the same as if the scope of the savings bank statute itself had been extended so as to include banks and trust companies in like manner as savings and building associations were brought within the Act of 1851 through amendment by Chapter 67, Public Acts of 1859. The occasion for the change last mentioned was that after the original Act was passed charters were granted to such associations. *Society for Savings* v. *Coite, supra,* p. 903 of L. Ed. We are convinced that the incentive of the 1907 Act was similar; reference to the Special Acts discloses that, for several years preceding, many trust company charters had been granted, and amendments of existing charters passed, giving such corporations, in addition to the primary functions as fiduciaries and commercial depositaries which had hitherto characterized them, the right to establish and maintain departments for savings deposits. The effect of extensive exercise of this right necessarily was to divert deposits from the savings banks and, in consequence, to deprive the State of revenue obtained from taxation of corporations of the latter class. It was logical and appropriate, therefore, that a tax of the same nature and rate and computed in like manner should be exacted from trust companies on account of this special franchise privilege to engage in activities which were essentially competitive with savings banks.

The basis and ascertainment of amount of the tax provided for by § 1287 and its predecessors and the procedure for its assessment and collection have depended upon the reference to § 1285 and its antecedents, and the practical construction has been to regard § 1285 as interdependent with § 1287 for all

purposes connected with the administration of the latter statute. We entertain no doubt that this relation also obtains as to the nature of the tax. The records in the present cases, and in *Shippee* v. *Riverside Trust Co., supra,* indicate that the tax was treated by all the parties as "under §§ 1285 and 1287," and it appears that the suggestion that the tax should be differently classified—as one on property—is now advanced for the first time. The reasons already mentioned are sufficient to render this proposition untenable.

The fact that the corporations taxed under § 1287 are stock companies, as distinguished from mutual savings banks, affords no legal or practical obstacle to the imposition of a franchise tax; a like situation obtained as to savings and building associations which were brought within the savings bank tax statute by the amendment of 1859. If the General Assembly of 1907 had in contemplation such distinctions between savings banks and other banks and trust companies as to their relations to savings deposits and depositors as have since been noted in *Lippitt* v. *Thames Loan & Trust Co.* (1914) 88 Conn. 185, 193, 90 Atl. 369; *Alexiou* v. *Bridgeport People's Savings Bank,* 110 Conn. 397, 400, 148 Atl. 374, and *Bassett* v. *City Bank & Trust Co.,* 115 Conn. 1, 160 Atl. 60, evidently these were not regarded as involving, and they do not afford any fundamental or material objections to the imposition, upon both, of the same variety of taxation. Indeed, in at least one aspect, a tax upon the franchise of a bank or trust company to operate a savings department is even more logical and appropriate than as applied to a savings bank, inasmuch as profits from that department accrue to the benefit of the corporation itself, instead of to the advantage of

the depositors as in the case of mutual savings banks. *Bassett* v. *City Bank & Trust Co., supra,* p. 27.

We conclude, therefore, that the tax provided for by § 1287, as well as that under § 1285, is upon franchise instead of property.

As the tax is not upon property, which would be subject thereto although in the hands of a receiver, we are required to decide whether, upon the facts presented, the receivers are liable for the payment of the tax upon the franchise of the trust companies to operate a savings department. One question which becomes material, especially in the Naugatuck case, is whether the tax is upon the value of the franchise on the tax day, January 1st, or, as suggested on behalf of the State, on the value thereof during the year preceding. In *Shippee* v. *Riverside Trust Co., supra,* the point was not directly in issue and the soundness of the theory first above mentioned was uncontroverted, but our present consideration indicates that the construction there assumed is correct. The statute involved in the Massachusetts cases there cited in which that view was adopted provided for a tax of one half of one per cent per annum to be assessed one half on the average amount of deposits for the six months preceding the first day of May and the other on the average of deposits for the six months preceding the first day of November, and required payment within ten days after the first Monday of June and December following. Chap. 224, §§ 4 and 5, Mass. Stat. 1862. In *Commonwealth* v. *People's Five Cents Savings Bank* (1862) 87 Mass. (5 Allen) 428, it was held that the tax was not laid on the property of the bank, or its deposits, or the business which the bank transacted during the given period, but upon the value of the franchise on the first day of May, or in other words, on its capacity to transact business on that

day; and that the extent of its capacity on that day could properly be determined by the amount of its business during the preceding six months. That amount would disclose its capacity and the value of the privilege and benefit it enjoyed under its charter on the day when the tax was assessed. *Commonwealth v. Lancaster Savings Bank* (1878) 123 Mass. 493, 496.

Our statute appears even more significantly to indicate and require a similar construction, as the prescribed basis for the ascertainment of the tax is the amount of deposits on a certain day—January first—without reference, by way of average or otherwise, to deposits during a period preceding that date as in the Massachusetts statute and that involved in *State* v. *Bradford Savings Bank & Trust Co.*, 71 Vt. 234, 44 Atl. 349. The language and history of the New Hampshire statute held to impose a property tax (*Wyatt* v. *State Board of Equalization*, 74 N. H. 552, 70 Atl. 387) clearly distinguish it. Our statute contains no provision for apportionment of any fractional part of the year. *State ex rel. Automobile Machine Co.* v. *Brown*, 121 Ohio St. 73, 166 N. E. 903. There is nothing to indicate that the tax is intended to cover a period succeeding the date as of which it is assessed, as held in *Johnson* v. *Johnson Bros.*, 108 Me. 272, 80 Atl. 741. The report from which the tax is determined affords no means of mathematical computation for a part of the year, as did that for the purpose of the corporation income tax involved in *Slater Mills, Inc.* v. *Gilpatric,* 97 Conn. 521, 117 Atl. 806, and several other tax statutes.

As we conclude that the tax is upon the value of the privileges exercised and benefits enjoyed under the franchise on January first, measured by the amount of savings deposits on that date, it remains to be ascertained whether, under the conditions exist-

ing in the instant cases on January 1st, 1932, this tax was applicable to the respective corporations. The finding in the Commercial Trust Company case shows that the restraining order was issued by the bank commissioner on December 13th, 1930, a temporary receiver was appointed December 22d, and the permanent receiver on February 6th, 1931; that the Trust Company, since December 13th, 1930, has exercised none of its corporate privileges, and for more than a year prior to January 1st, 1932, all its property, books and papers had been in the possession of a receiver with the duty of securing and preserving its assets, collecting all moneys owing to it, and taking measures to speedily liquidate the corporation. In the case of the Naugatuck Bank and Trust Company the date of the restraining order was October 7th, 1931, the temporary receiver was appointed on October 8th and the permanent receiver on November 13th; the order for appointment, in addition to conferring general powers to take possession of and administer all the property and assets, enjoined the corporation "from exercising any of its privileges or franchises."

It appears, therefore, that on January 1st, 1932, both these corporations were effectively and wholly disabled from conducting a savings department as a corporate enterprise and deprived of any profit or benefit to be derived therefrom. These cases, therefore, unlike *Shippee* v. *Riverside Trust Co.*, clearly come within *Commonwealth* v. *Lancaster Savings Bank*, 123 *Mass.* 493, instead of *Commonwealth* v. *Barnstable Savings Bank*, 126 Mass. 526, which cases were discussed and differentiated in the *Riverside Trust Co.* case, pages 671, 672. Here, as was held in the *Lancaster Bank* case, the tax "being . . . upon the privilege of transacting a particular business, it would seem necessarily to follow that if, at the time

when the tax is to be assessed and is declared to accrue, the corporation has for the purpose of transacting its business practically ceased to exist and can no longer enjoy the privilege, then no tax is to be exacted" (p. 496). "Without considering the question whether the franchise could be said to exist [on January 1st, 1932], it is very clear that as a privilege to transact business on that day it did not exist" (p. 497). After a bank is placed in the hands of a receiver and deprived of the right to exercise its franchise and of the profits and benefits to be derived therefrom, neither the bank nor the receiver is liable to pay such a franchise tax assessed after the latter's appointment. Gluck & Becker, Receivers of Corporations (2d Ed.) p. 372; 3 Michie, Banks & Banking, §§ 44, 54, 61, 93; *Wilson* v. *First State Bank,* 77 Kan. 589, 595, 95 Pac. 404. A receiver, except when authorized to continue the business, as of a public service corporation, operates solely under the law and the orders and directions of the court, and not under the corporate franchise. *Greenfield Savings Bank* v. *Commonwealth,* 211 Mass. 207, 209, 97 N. E. 927. He is no more engaged in exercising the corporate franchise than a trustee in bankruptcy. *Ohio* v. *Harris,* 229 Fed. 892, 901.

In the *Lancaster Bank* case, as in the present Naugatuck case, the corporation had been expressly enjoined against doing any further business, but it was held in *Greenfield Savings Bank* v. *Commonwealth, supra,* that though no injunction against continuance or resumption of business had been issued, the fact that the bank was dispossessed of its property and thereby prevented from doing business was sufficient to defeat applicability of the tax. "The bald existence of the corporation remains, but all its other substantial rights and privileges are in suspension" (p. 209

of 211 Mass.). The same case effectively meets the suggestion now made that the franchise continues taxable because of the possibility that, through reorganization or otherwise, it may again be exercised by the corporation. It is pointed out therein that the statutes under which the property and business of the bank were taken over by the bank commissioner contemplated final liquidation; manifestly the same is true of the receiverships now under consideration. In the latter instance, as in the former, the corporation "has no right nor power to exercise its franchise . . . its franchise is not in fact exercised by any one in its behalf and interest," and it is not subject to the tax "even though there is a legal possibility that its corporate functions may be resumed." *Idem,* p. 211.

It follows from the foregoing conclusions that there is no error in the Commercial Trust Company case, and the answer to the first question reserved in the Naugatuck Bank and Trust Company case is "No;" the remaining questions were contingent upon an affirmative answer to the first.

No costs will be taxed in this court in either case.

In this opinion the other judges concurred.